**SIGNED THIS: January 25, 2024**

_____

**Mary P. Gorman
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    23-70120 |
| DESHAE NICOLE LEWIS, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| NANCY J. GARGULA, | ) | |
| United States Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    23-07018 |
| | ) | |
| DESHAE NICOLE LEWIS, | ) | |
| | ) | |
| Defendant. | ) | |

## **O P I N I O N**

Before the Court after trial is a complaint filed by the United States Trustee objecting to the Debtor's discharge. For the reasons set forth herein, the Debtor's discharge will be denied.

## I.      Factual and Procedural Background

The Debtor, Deshae Nicole Lewis, filed her voluntary Chapter 7 petition on February 27, 2023. She was represented in the filing by Benjamin Brown, an attorney associated with Land of Lincoln Legal Aid, Inc. Andrew Erickson was appointed as the Chapter 7 Trustee.

Relevant to the issues here, the Debtor scheduled ownership of two bank accounts: one at the Bank of Springfield with a zero balance and the other at Stride National Bank d/b/a Chime with a balance of $580. She claimed the Chime account exempt using part of her wild card exemption. The Debtor also scheduled an interest in a security deposit with her landlord in the amount of $1450. The Debtor said that she was employed earning about $3300 gross per month and that she also received $455 in food assistance benefits for herself and her four children who resided with her. On her Statement of Financial Affairs ("SOFA") filed with her petition, the Debtor denied making any payments of $600 or more to any creditor within 90 days of her filing, denied making any transfers for the benefit of any insiders, and denied holding any property for any other person.

With her petition, the Debtor filed an Application to Have the Chapter 7 Filing Fee Waived. The Debtor claimed that she could not afford to pay the filing fee and, in support of her request, attached a copy of the Schedule A/B she filed with her petition. The request for fee waiver was granted after review by the Court. Shortly after the Debtor's initial creditors meeting, however, the Trustee filed a motion to vacate the order granting the fee waiver. In his

motion, the Trustee asserted that the Debtor had failed to disclose over $9000 in tax refunds received shortly before filing and several deposit accounts with sufficient funds to have paid the filing fee. The Debtor appeared by her attorney at the hearing on the Trustee's motion and consented to the relief requested. The order granting the fee waiver was vacated, and the Debtor paid the filing fee.

Also shortly after the initial creditors meeting, the Trustee filed a motion to compel the Debtor to produce statements for the multiple bank accounts he said were not disclosed and to produce records regarding her disposition of the tax refunds she received before filing. Again, the Debtor appeared through counsel and did not object. An order granting the motion to compel was entered on April 18, 2023; the Debtor was ordered to produce documents including bank statements before her next meeting with the Trustee and to amend her schedules within 30 days.

Two additional meetings with the Debtor were conducted by the Trustee. After three meetings with the Trustee, the Debtor filed amended schedules disclosing eight bank accounts—including the two listed in her original schedules—owned by her at the time of filing with balances totaling over $3700. She also scheduled several additional creditors. Almost four months later and after this adversary proceeding was filed, the Debtor filed an amended SOFA disclosing payments she made in the 90 days before filing to Panther Creek Country Club for $2500 and to Royal Entertainment for $632. The

payments were described as prepayments for the Debtor's wedding venue and honeymoon.

The United States Trustee ("UST") timely filed this adversary proceeding objecting to the Debtor's discharge. The UST asserted that the Debtor made false oaths in her schedules, SOFA, and fee waiver request by failing to disclose all of her bank accounts, her prepayments to Panther Creek Country Club and Royal Entertainment, the transfer of an interest in a 2015 Audi vehicle to her fiancé, the receipt of rental assistance payments and other money from her fiancé, the purchase of Bitcoin, and numerous transfers to and from various individuals and her multiple accounts. The UST also claimed that the Debtor's failure to disclose all her bank accounts on her original schedules constituted concealment and a basis to deny her discharge. The Debtor answered the complaint admitting most of the factual allegations, but she denied acting knowingly and fraudulently and asserted that her conduct did not justify denying her discharge.

The matter was tried on December 5, 2023. The attorney for the UST called the Debtor as the only witness. Prior to the trial, the attorney for the UST docketed fifteen exhibits and a stipulation with the Debtor's attorney agreeing to the admission of the exhibits. The exhibits included transcripts of each of the three creditors meetings held by the Trustee with the Debtor.

The Debtor's first meeting with the Trustee was held telephonically on April 3, 2023. After being sworn in, the Debtor testified that she had reviewed her petition and schedules before she signed them, that everything in the

documents was true and correct, and that there were no errors in the documents that needed correction. The Trustee questioned the Debtor regarding the bank statements and tax returns she had produced. Through that questioning he learned that the Debtor had an additional undisclosed credit builder account with Chime, as well as undisclosed accounts with Cash App and FanDuel. She also appeared to have undisclosed credit relationships with Minto Money and Digit.co. The Debtor admitted that she had received almost $9000 in tax refunds shortly before filing, that she had the refund money deposited to a prepaid Emerald Card, and that she had spent the money on bills. The Trustee continued the meeting for several weeks, admonishing the Debtor and her attorney that there appeared to be serious inaccuracies in her schedules, that amendments needed to be made, and that he would be seeking to have the order waiving the filing fee vacated.

The second telephonic meeting with the Debtor was conducted by the Trustee on April 24, 2023. The Trustee started the meeting by noting that, notwithstanding the entry of an order granting his motion to compel, the Debtor had not amended her schedules or produced all required documents. The Debtor's attorney assured the Trustee that amendments would be forthcoming and claimed that all required documents had been produced. In her testimony, the Debtor again admitted receiving almost $9000 in tax refunds in January and February and having the refunds deposited to the Emerald Card. She admitted transferring significant amounts from the Emerald Card to her Cash App account to pay day-to-day expenses but was

unable to explain a $2295 transfer from Cash App to Bancorp Bank just a few days before filing bankruptcy. She offered no reason for not disclosing the Emerald Card with her original filing. She identified a $2500 payment from the Emerald Card account to Panther Creek Country Club as a deposit for an event she was planning in September but was unable to provide any explanation for why the transaction had not previously been disclosed. Later she admitted that the planned event was her wedding and that she had also made an undisclosed payment of $632 to Royal Entertainment for a Cancun honeymoon trip. She acknowledged that her Cash App statement showed a Bitcoin purchase but denied that she owned Bitcoin; she claimed to have allowed her fiancé to use her account to make the purchase. She also admitted that she had transferred a one-half interest in a 2015 Audi vehicle to her fiancé in the several months before filing bankruptcy. The Trustee again admonished the Debtor that he had not received sufficient documents to be able to understand her financial transactions. He stated that the meeting would be continued one additional time and that the Debtor was required to produce all requested documents.

The attorney for the UST also appeared at the second meeting and questioned the Debtor. The Debtor again stated that she had reviewed a complete copy of her petition, schedules, and other documents before they were filed. She agreed that she had provided her attorney with the information contained in her documents.

The third telephonic meeting was held by the Trustee with the Debtor on May 8, 2023. The Debtor had produced additional bank statements since the

prior meeting. She admitted that the Chime Credit Builder account had over $1750 in it on the date this case was filed and that the balance on her Emerald Card was over $450 on that date. She claimed that the failure to disclose these accounts and balances along with the payments she had made to Panther Creek Country Club for her wedding event and to a travel agency for her honeymoon were honest mistakes. She admitted, however, that she had used the various accounts repeatedly during the several weeks and days leading up to the bankruptcy filing and was aware of the existence of the accounts and the payments she had made. She acknowledged that she had yet to file any amendments to her schedules or other documents to correct the many errors in those papers. The Debtor also acknowledged that she was initially named on the title to the 2015 Audi driven and co-owned by her fiancé before transferring her interest in the vehicle to him in December of 2022. The vehicle loan had also been refinanced at that time. The Debtor admitted that she had not disclosed the transfer.

At trial, the Debtor again admitted that she had met with her attorney and reviewed the petition, schedules, and other documents before they were filed. She said that she understood what she was signing and was not confused. She agreed that the warnings that she was signing the documents under penalty of perjury were read by her and were not unclear. Nevertheless, she offered no explanation for the numerous errors in her paperwork; she repeatedly said that she forgot information or was unaware that information needed to be disclosed.

The Debtor admitted that she had eight rather than two bank accounts when she filed and that she was aware of the additional accounts when she filed. She knew when she filed that she had a Cash App account, a FanDuel account, the Chime Credit Builder account, the Digit account, and the Emerald Card. She agreed that she used the accounts regularly and identified statements for several of the accounts evidencing their use during the several weeks and days before filing; she admitted that, among those transactions, were a number of transfers to family members that had not been disclosed.

She said that she had debit cards for most of the accounts and, whenever she made purchases, she was aware of which accounts held funds at any given time. She also said that she had online access to the accounts and could have checked the balances on the accounts before filing by using her phone. But when asked about the $2295 transfer to Bancorp Bank that the Trustee had asked about at the creditors meeting, she was unable to identify the account to which the transfer was made.[1] The Debtor identified amended schedules filed in May 2023—after the three meetings with the Trustee—that showed a combined date-of-filing balance in her accounts of over $3700.

The Debtor described the Emerald Card more particularly as an H&R Block Emerald Prepaid Mastercard issued for the purpose of receiving deposits of her tax refunds. She identified statements showing that $3500 had been

---

[1] In reviewing the account statements admitted into evidence by stipulation, it appears that the $2295 Bancorp Bank transaction was a transfer of funds from the Debtor's Cash App account to her Chime Checking account. The February 2023 Cash App account statement shows the transaction occurring February 22, 2023, for which the Debtor was assessed a fee of $40.16. According to the February 2023 Chime Checking account statement, $2254.84 was deposited on February 22, 2023—the same date and amount of the transaction in question less the fee charged for the transfer.

deposited to the Emerald Card on January 31, $4030 had been deposited on February 21, and $910 had been deposited on February 23. She acknowledged using the Emerald Card in February to transfer several thousand dollars to her Cash App account and to pay $2500 to Panther Creek Country Club for her upcoming wedding. Of the refund money transferred from the Emerald Card to the Cash App account on February 22 specifically, $2254.84 was in turn transferred to the Chime Checking account that the Debtor then used to pay Royal Entertainment $632 for her honeymoon trip. She described the payments to the country club and for her honeymoon as deposits but also admitted she had not disclosed the payments as such on her original schedules or her amended schedules filed in May. She identified an amended SOFA filed in September 2023 wherein she disclosed the wedding-related payments as payments made to creditors within 90 days of the bankruptcy filing.

The Debtor also identified her Application to Have the Chapter 7 Filing Fee Waived. She acknowledged that, in support of the Application, she had attached her original Schedule A/B that listed only two of her eight bank accounts and significantly understated the funds she had available to pay the filing fee. She also agreed that her fiancé had assisted her in both December 2022 and January 2023 with her rent payment, but she failed to disclose that on the Application even though the form specifically asks for such information. She admitted that, when she filed, she had sufficient funds on hand to pay the filing fee despite affirmatively representing in the Application that she could not pay the fee even if given time to pay in installments.

The UST's exhibits were all admitted upon the conclusion of the Debtor's direct testimony. The Debtor presented no further testimony or other witnesses or exhibits in her defense. The attorneys offered brief closing arguments. The matter is ready for decision.

## II.    Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Objections to discharge are core proceedings. 28 U.S.C. §157(b)(2)(J). The issues before the Court arise from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III.    Legal Analysis

A discharge in bankruptcy is not a right but rather a privilege reserved for the "honest but unfortunate debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)) (other citations omitted). Denial of a debtor's discharge is a harsh penalty, and the statutory provisions that provide for such denial must therefore be strictly construed against the objector and in favor of the debtor. *Norton v. Cole (In re Cole)*, 378 B.R. 215, 221 (Bankr. N.D. Ill. 2007) (citations omitted). The plaintiff bears the

burden of proving by a preponderance of the evidence that a debtor's discharge should be denied. *In re Kempff*, 847 F.3d 444, 447 (7th Cir. 2017) (citation omitted). Here, the UST has asserted two separate grounds for the denial of the Debtor's discharge. Each will be analyzed separately.

### A. Count I — 11 U.S.C. § 727(a)(4)(A)

A debtor's discharge may be denied if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account[.]" 11 U.S.C. §727(a)(4)(A). "The purpose of §727(a)(4) is to ensure that the debtor provides dependable information to those who are interested in the administration of the bankruptcy estate." *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 899 (Bankr. N.D. Ill. 2003) (citations omitted). To obtain the denial of the Debtor's discharge, the UST must prove that: (1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the case. *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011) (citations omitted). The UST presented evidence on each element of the cause of action.

The UST claims that the Debtor made false oaths in her petition, schedules, SOFA, and her application for a fee waiver. The UST also claims that the Debtor made false oaths at the first creditors meeting conducted by the Trustee. The Debtor's petition, schedules, SOFA, and application for filing fee waiver were all signed by the Debtor under penalty of perjury and include

-11-

her declaration that the information contained in the documents was true and correct. Such unsworn declarations constitute oaths. 28 U.S.C. §1746; Fed. R. Bankr. P. 1008; *see John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004) (citations omitted). The transcripts of the Debtor's meetings with the Trustee also clearly establish that she was under oath when she testified at those meetings. There is no dispute—the statements made by the Debtor at issue here were all made under oath.

There also is no question that a number of the statements made under oath by the Debtor were false. The UST has alleged multiple falsehoods made by the Debtor. In considering this element, however, it is sufficient to focus on several of the most egregious false statements made by the Debtor. She listed only two financial accounts on her Schedule A/B when she actually had eight accounts. She said that the balances in her accounts totaled about $500 when she filed; the combined amount in her accounts was actually more than $3700. On the documents she initially filed, the Debtor denied making any payments to creditors of $600 or more during the 90 days before filing. She had, however, paid Panther Creek Country Club $2500 and Royal Entertainment $632 just days before filing. The Debtor said in her fee waiver request that the attached Schedule A/B was correct when it was not, and she declared that she could not pay the filing fee even in installments when, in fact, she had more than enough funds on hand to pay the fee. She stated at her initial meeting with the Trustee that all the information she had previously provided was true and correct and contained no errors even though her documents were full of misstatements and

errors. The Debtor made no claim at trial that the initial information she provided about her bank accounts or prepetition payments was correct. The Debtor's own testimony and amended documents confirm that she made multiple false statements under oath.

The UST also proved that the Debtor knew her statements were false. The Debtor admitted that she was not only aware of but also kept close track of all her accounts, knowing the balance in each account at any given time. As the attorney for the UST pointed out during the trial, the Debtor was making a monthly gross income of about $3300 at the time she filed. Receiving tax refunds of $3500 in January and another $4900 in February significantly increased her spendable resources, and her testimony that she forgot about this money—almost half of which was still in her accounts when she filed—was just not credible. Likewise, the two payments she made related to her upcoming wedding were sizeable payments for an important event. Having made the payments just days before filing, her claim that she forgot about the payments was also not credible. At best the Debtor was sloppy in providing all required information to her attorney; she knew she was providing only partial information but did not care. "[N]ot caring whether some representation is true or false—the state of mind known as 'reckless disregard'—is, at least for purposes of the provisions of the Bankruptcy Code governing discharge, the equivalent of knowing that the representation is false and material." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (citations omitted). The Debtor admitted that she had information about all her accounts and transactions at

her fingertips through online access and her phone. Her failure to care enough to look up the information as she prepared her bankruptcy documents establishes, at a minimum, that she recklessly disregarded her obligation to be truthful and therefore may be charged with knowledge that her statements were false.

The evidence also clearly established that the Debtor's false oaths were made with fraudulent intent. Fraudulent intent "involves a material representation that you know to be false, or, what amounts to the same thing, an omission that you know will create an erroneous impression." *Id.* at 728 (citations omitted). Further, "a showing of reckless disregard for the truth is sufficient to prove fraudulent intent." *Stamat*, 635 F.3d at 982 (citations omitted). Here, the Debtor failed to disclose all her bank accounts and several large prepetition payments to creditors. She knew and intended for those omissions to create the impression that she had no ability to pay the filing fee and that she had no assets for the Trustee to administer. At a minimum, she recklessly disregarded her obligation to provide the correct information so that the Court could assess her request for a fee waiver and the Trustee could determine whether there were assets for administration.

Further, although the Court has focused on several of the Debtor's major omissions and false oaths, the Debtor's paperwork was littered with errors. Her bank statements show that she purchased Bitcoin, but she failed to disclose either her ownership of the Bitcoin or that she was holding the Bitcoin for someone else. She conveyed her interest in the 2015 Audi to her fiancé several

months before filing but failed to disclose that transfer. She made and received numerous cash transfers to and from her fiancé and others during the weeks and months before filing but did not disclose any of those transactions. She made no effort to investigate or explain the $2295 transfer to Bancorp Bank despite the issue being raised at her first meeting with the Trustee and subsequently included among the allegations of the UST's complaint. Such significant and numerous errors establish a pattern of reckless disregard for the truth. *Gargula v. Nave (In re Nave)*, 2015 WL 3961768, at *5 (Bankr. C.D. Ill. June 29, 2015) (citations omitted). The sheer volume of errors here justifies denial of the Debtor's discharge. *Stamat*, 635 F.3d at 982 (citations omitted).

The final element of proof required is that the false oaths were material. A false statement is material "if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Id.* (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010)) (other citations omitted). Materiality must be given a broad meaning here because the "successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and [her] willingness to make a full disclosure." *Lardas v. Grcic*, 847 F.3d 561, 570 (7th Cir. 2017) (quoting *Stamat*, 635 F.3d at 983). A false oath may be material even if there is no showing of particular detriment to a creditor or the estate resulting from the false oath. *Baccala Realty, Inc. v. Fink (In re Fink)*, 351 B.R. 511, 529 (Bankr. N.D. Ill. 2006) (citations omitted). Here, the Debtor failed to disclose six bank accounts and over $3000 in funds. She

also failed to disclose two transfers related to her wedding and a number of other transactions with family members. By failing to disclose all her bank accounts, she hindered the Trustee's ability to understand her financial condition; the Trustee was required to hold three meetings with the Debtor and seek an order compelling her to amend her schedules in order to obtain information that should have been produced voluntarily at the commencement of the case. The result of the Trustee's efforts is that the filing fee has now been paid and the Trustee has recovered assets to administer for the benefit of creditors. There is no question that the Debtor's false oaths were material.

The UST proved each element of the cause of action by a preponderance of the evidence. The Debtor's discharge will be denied for making false oaths in connection with this case. 11 U.S.C. §727(a)(4)(A).

### B. Count II — 11 U.S.C. § 727(a)(2)(A)

A debtor's discharge may be denied if the "debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of the filing of the petition[.]" 11 U.S.C. §727(a)(2)(A). To prevail on this count, the UST must prove: (1) that the Debtor transferred, removed, destroyed, mutilated, or concealed property; (2) that belonged to the Debtor; (3) within one year of filing the petition; (4) with intent to hinder, delay, or defraud a creditor of the estate. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd sub nom.*

*Kontrick v. Ryan*, 540 U.S. 443 (2004). The UST presented evidence on each element of this cause of action.

The UST has alleged a number of transfers made by the Debtor during the year before filing. The focus of this inquiry, however, can be limited in large measure to the two wedding-related transfers made by the Debtor: the payments of $2500 to Panther Creek Country Club and $632 to Royal Entertainment for her honeymoon trip. The Debtor has acknowledged that both transfers were made by her just days before this case was filed using funds from her accounts. Thus, the first three elements of the cause of action were easily established by the UST. The Debtor only disputes that the transfers were made with the intent to hinder, delay, or defraud her creditors.

Courts may consider a variety of factors in determining whether a debtor has transferred property with the intent to hinder, delay, or defraud creditors. The factors include the retention of possession, benefit, or use of the property in question, the financial condition of the debtor before and after the transfer, and the chronology of the events and transactions under inquiry. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002) (citations omitted). Here, the Debtor retained the full benefit of both payments; one secured the country club for her wedding venue, and the other served as a substantial deposit towards her Cancun honeymoon trip. Before the transactions, she had thousands of dollars in her accounts from her tax refunds; shortly after making the payments, she filed bankruptcy claiming that she had no non-exempt assets and not even enough money to pay the filing fee. The chronology of

events strongly suggests that the Debtor made the payments to remove the funds from her estate just before filing bankruptcy to secure her wedding plans and avoid being forced to use the funds to pay creditors. The timeline shows an intent to hinder creditors from reaching the funds she wanted to use for her wedding and honeymoon.

Direct evidence of a debtor's intent to hinder, delay, or defraud creditors is often not available but may be inferred from the circumstances of the debtor's conduct. *Id.* at 790; *In re Smiley*, 864 F.2d 562, 566 (7th Cir. 1989). Determinations of intent may depend on an assessment of a debtor's credibility. *In re Burgess*, 955 F.2d 134, 137 (1st Cir. 1992), *abrogated on other grounds by Field v. Mans*, 516 U.S. 59 (1995); *In re Bonnett*, 895 F.2d 1155, 1157 (7th Cir. 1989). Here, the Debtor lacked credibility. She failed to disclose the payments to Panther Creek Country Club and Royal Entertainment, and, importantly, she also failed to disclose her Emerald Card and Cash App account through which she funneled her tax refunds that were the source of the funds used to make the payments. Even though ordered in April to file necessary amendments within 30 days, she waited until September to amend her SOFA to disclose the payments. Her testimony that she forgot about such significant payments was not believable, and her statement that she did not understand that she needed to make full disclosure was equally incredible. The Debtor made no credible claim that there was anything confusing about her obligation to list all her bank accounts, any deposits she had made, and any payments of $600 or more made to creditors within 90 days of filing. The only

inference to be drawn from the lack of disclosure is that the Debtor did not want to disclose the wedding-related payments and therefore did not disclose them. Her intent in making the wedding-related transfers was, without question, to hinder creditors from reaching the funds she wanted to spend on her wedding.

The UST proved each element of the cause of action by a preponderance of the evidence. The Debtor's discharge will be denied for transferring property within one year of filing with the intent to hinder her creditors. 11 U.S.C. §727(a)(2)(A).

## IV.    Conclusion

The Debtor made multiple, materially false statements under oath in her bankruptcy petition and schedules and meeting of creditors testimony by failing to disclose several accounts and transactions and misrepresenting the completeness and accuracy of the disclosures she did make. The Debtor made the statements knowingly, fraudulently, and with reckless disregard for the truth. She made the false statements for the purpose of avoiding scrutiny from the Trustee and as part of a scheme to conceal her prepetition use of funds and hinder creditors and the Trustee. Because the UST presented evidence establishing all required elements of proof, her objection to the Debtor's discharge under 11 U.S.C. §727(a)(2)(A) and (4)(A) will be sustained. The Debtor's discharge will be denied.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###